All rise. The Illinois Public Court Fifth Division is now in session. The Honorable Justice Jessie G. Reyes is presiding. Thank you. Good morning, everyone. Please have a seat. I see we have a full house. I want to welcome everybody. And, unfortunately, one of our colleagues, Judge Rankin, will not be here in person, but she will be listening to the tape and participating accordingly. All right. So I can call the first case. Dermott, Timothy v. City of Chicago. Counsel, step up, please. Thank you. And please identify yourselves for the record and who you represent. Good morning, Your Honor. My name is Dan Herbert, H-E-R-B-E-R-T, and I represent the appellant, Tim McDermott. Okay. Good morning. I'm Suzanne Lewis, and I represent the Superintendent of Police. Okay. Great. Thank you. Fifteen minutes apiece. Time for a rebuttal. Sure. How much? Five minutes would be great. Five minutes. Two minutes apiece. Okay. All right. Okay. Thank you. Thank you. All right. Ready to proceed? Yes. Thank you, Your Honors. So I have a question. Sure. Was there an oversight of the information about the photo in your brief? There doesn't seem to be any information about the details about the photograph, what type of photograph it was, what was involved in the photograph, what was depicted in the photograph. Well, did you think we weren't going to read the rest of the briefs or look at the record? No, but I think that's a very good question. And the details regarding the photograph, quite frankly, that's part of our argument, is that the details are what's lacking here. And the lack of details is really… But the details we do have are so egregious. Would you not agree that that changes the whole framing of the argument? I would agree that if we take – if we assume or make the same assumptions that the police board did and that the superintendent did, then absolutely, they are extremely – it's an extremely egregious photo. But let's go to your argument that the CR files should have been considered, either in mitigation or however you wanted them considered, they should have been considered. So in order to have the CR files considered, they have to be kind of the same, don't they? The same circumstances. And again, I'm lacking a lot of facts about what those photographs were that you wanted admitted. I have one that is an airplane crash where two officers are, and one is the G20 summit with a group of officers and an arrestee in front of them. Again, there's no facts telling me what is so similar about those two other than the fact that they both get pressed. Is that the only commonality that we need? Well, I think the point about the press is not common. That's a distinguishing factor and it's an important factor. The two cases in which I cited two that I attempted to use as an exhibit or judicial notice or mitigation, those two cases received significant press. My case received significant press at least ten years after this incident occurred. If I'm taking a picture with a group of Ku Klux Klan members, does it really matter when the picture comes out? I think it does from a certain standpoint. I certainly think it does. If taking a photo with a Ku Klux Klan member, or in this case with an African American who appears to be the subject of some type of a prank, when it comes out may not be... Mr. Herbert, let me stop you right there. I've been a defense attorney. I know how hard this job is. But calling what Officer McDermott did a prank is an egregious minimization of what occurred in this case. He held a defendant by the throat, pointed a rifle at his head while someone else put antlers on his head. That's not a prank. Dehumanizing someone that way is not a prank. Your Honor, if I may, you cited a point that is one of the basis for our argument. And with all due respect, it's an improper assumption to make. What's the improper assumption? Her Honor indicated that by having an African American defendant and holding him by the neck and having somebody place antlers on him is a horrible... on its face. And I would agree with everybody I think would agree on that, but I certainly would agree on that. But the distinguishing factor here is that is an assumption that is made. It's an assumption that this individual was an arrestee, was a defendant. Does that make a difference though? It makes a huge difference. If he's an arrestee, you can insult somebody? You could make fun of them? Ridicule them? No, I think from the opposite standpoint. If this individual was in fact an arrestee, and it's important to note that the evidence in this case shows that this individual was not an arrestee. We were the respondent. We didn't bear the burden of proof. The superintendent conducted a thorough examination of all the arrest records. But we're still talking about a human being. And based on what we've seen here, there is no consent. All right, number one. So there's no consent of this individual being placed in a photograph with antlers on his head. I mean, I think anybody would agree that that is disparaging for anybody, regardless of whether they're an arrestee or not. So I think allowing someone to put antlers on someone's head and ridicule them in a photograph, whether they're an arrestee or not, really doesn't make a much of a difference, does it? Your Honor, again, there is no evidence to suggest that this was ridiculing. You talk about how there was no evidence presented about consent. Again, Your Honor, with all due respect, we are the respondents in this case. We have a due process. You're the appellant in this case. Thank you for pointing that out. But in the case for Ward, the charges were brought against my client. He has a significant due process interest and a significant property interest, and that is this job, this career that he had, and served impeccably. Well, is there any evidence about consent here? Based on the record, we don't even know who this individual is. Nobody does, Your Honor, and that's the point. So what about the issue of consent? We did not present any evidence of consent, but more significantly, the superintendent did not present any evidence that there was no consent, and that is the important point here. But isn't that all of the weighing of the evidence and all of that, isn't that all up to the Board to do? And when we get it, isn't our whole role just to say, was the Board's decision arbitrary or capricious? Is that against the manifest weight of the evidence? In our argument, absolutely it is. The Board is in a position to make findings, but they become arbitrary when they are based on things that are not contained within the record, and that is exactly what we have in this case. Your Honor brought up a point, and it's been brought up many times. Looking at the photo, it's easy to assume that absolutely there was no consent, but in order for an individual's due process rights to be protected, there has to be more than that. There has to be some piece of evidence to suggest that it was not consensual, and we have none. The only do have consent here from one party, that's Officer McDermott. He consented to being in that photograph. He did. But being in a photograph in itself is not a violation of any Department rules. Obviously, what Your Honors are thinking and what the Board thought and what the Superintendent thought is that this was an arrestee and he was being mocked by the arresting officers. And I would state that, again, looking at the record, I think that it's kind of a horrible assumption to make in this case based upon the evidence here. But isn't that an assumption for the Board to make and not for us to reweigh that? Your Honor, with all due respect, no, because the Board can't make an assumption. They cannot make a decision that's based on something that is not contained within the evidence. And to look at a situation and assume this individual, he's black, so this must be the other officers are white, so to make the assumption that he's black, they're white, he has to be an arrestee. Let's look at the evidence for a moment. So the CI files you wanted to have by the Board to consider contain some photographs. Yes. So how do you distinguish this photograph with Officer McDermott, right, with as to the other ones and why they should have allowed those other ones in? Where's the similarity? Because factually there are no similarities, but maybe I'm missing something here. Okay. Well, I would say we're certainly not distinguishing them. We're saying that they only have to distinguish them because they didn't allow them in, right? So why is it pertinent for those photographs to come in if actually they're not similar to the one that Officer McDermott sent? Well, I would disagree to a certain respect about them not being similar. All the photos were photos taken of police officers with other individuals. All the photos were obstructed. The photos in the CR cases were made public and were insensitive. The superintendent recognized the insensitivity of them. In the one photo, it was two police officers that were taking a photo, smiling in front of a Southwest airplane that had crashed at Midway Airport, and in that case a 6-year-old child died. We're familiar with the facts. Okay. So what I'm asking you is, you were trying to get those photographs in, right? So how is it relevant to this photograph when they're completely different? Other than they were photographs that were taken of police officers. The photo at the G20 Summit, I think, in many ways, is worse than the photo at issue in this case. The photo at the G20 Summit contained numerous police officers. These were Chicago police officers that were representing the police department in another city, Pittsburgh. It contained some of the highest-ranking members of the police department, which is part of our selective enforcement argument. And in this case, it's unquestioned that the individual in that picture is an arrestee, and they are standing behind this arrestee who is kneeling in handcuffs. What makes that case more egregious? I think a lot of factors. But the most important is that it's clear on its face that this was a non-consensual photo. In the case with the G21? Yes, because this is an arrestee. I think it's very proper for the board, for the superintendent, for your honors, the courts, to make a conclusion that, all right, this individual at the G20 Summit, he clearly was not consenting to this photo. How do we know that? Because he's under arrest. He's in handcuffs. He's got 25 police officers behind him. It's pretty clear that he's not consenting to this. In the case with McDermott, we don't have that. We do not have evidence that there was no consent. And I will submit that we don't have evidence that there is consent. But part of that is because the superintendent brought a case at least 10 years after the incident and it appeared out of nobility to conduct any meaningful type of investigation. But in this case, would the facts be different if this individual, if we were able to conclude that this individual was a member of the police team and they were on a hunting trip and they were joking, would that change the fact pattern and the assumptions here? And I think we all would agree, of course it would. How could you conclude that if this individual was a friend of theirs and he was submitting to this photo, but if he was a friend of theirs, we wouldn't be here today? If he was an employee of the Chicago Police Department, if he was a fellow officer, if he was anybody that they could attract, he would have been here and this would not have happened, correct? Possibly, but not necessarily. And here's why. To McDermott, first of all, it's uncontested that his role in this was nothing more than jumping into the photo and placing his hand here. Lifting him by the neck and pointing the rifle at his head. It wasn't just, come on, get him this group photo with us. He took an active role in that photograph. And I do not dispute the active role from the way Your Honor described it, but however the point is, as far as planning this photo and staging it, the evidence is clear that Tim McDermott didn't have anything to do with that. That's undisputed. So to say that Tim McDermott would have known who this person was, I don't think we can make that assumption. What if this individual was a police officer from another district, the people that staged this event? What if he was a janitor at the station? The problem with this court is that we can only go by what's in the record. We can't make assumptions. We can't presume. We can only go by what's in the record. So we don't have any evidence about consent. Therefore, there is no consent, right? Okay, before you run out of time, I'd like you to talk about Monius a bit. Monius seems to me to say it doesn't really matter what happened to other people. What matters is whether the board was within their authority. In fact, the direct quote from Monius says, cost for discharge can be found regardless of whether other employees have been disciplined differently. So we're talking about pretty remote instances, and I think Monius directly says, who cares? Okay, I'll address that. As I argued in the brief, we disagree with that interpretation of Monius for a number of reasons. But if I can just very briefly make a comment about what Ronald and Jesse Reyes indicated, talking about you're limited to what's contained within the record. That is our argument, Your Honor. We are 100% on board with you. It is limited to what is in the record. And the fact of the matter is the police superintendent and the police board made findings that this was patently demeaning, racial undertones, shockingly racially charged. Based on the evidence in the record, there is no basis for the board to make their conclusion. It's been proper to just look at a photo without knowing any of the context and say, this has to be racial. This has to be demeaning. And I submit again, why? Because this individual is black? We have to assume that he's an arrestee? We have to assume that he is not part of the gang here? Why? Because he's black. We can't get around the race issue here. It cuts both ways. The superintendent wants to use the race issue to say this was horrible, this was demeaning. But how about making that assumption based upon that person's race? That's pretty demeaning and offensive as well, to assume that this individual had to be some poor arrestee for no other reason, other than his race. That's it. And nobody knew who he was. We don't know that, Your Honor. We do not know who he was. Nobody knew who he was. He was unidentified. Nobody knew who he was. That's very clear from the record. Superintendent bore the burden to bring in evidence that this individual, to identify this individual. They searched all the arrestee records. They searched the whole database. This person wasn't found. So what can be inferred from that? He wasn't an arrestee. So from that we're supposed to infer that he consented to having a rifle pointed at his head and antlers put on his head. Your Honor? You're asking us to re-weigh the evidence that the Board has weighed. That's not our goal. I'm not asking you to re-weigh the evidence. I'm not. I'm asking you to look at the Board's findings based upon making assumptions that were improper based upon the evidence. The Board is limited to a review and making findings of what is contained within the record. The Board here clearly in its findings, in its ruling, indicated that this was maltreatment of this individual, and there is no basis for that other than our assumptions, meaning the trial of fact and the people on the other side of my client. There's no other basis for that other than this individual on the phone was black and the police officers were white. I have another issue regarding mitigating evidence. The Board didn't consider mitigating evidence. Yes. Doesn't a compel us to say that the Board doesn't have to consider mitigating evidence? They don't have to consider it, but to bar introduction of evidence that certainly will help the Board better make its decision, which is exactly what the case law talks about, certainly that is proper for the Board to conclude how the superintendent views conduct involving photos in bad taste of arrestees or a scene in which their conduct or their presence there is in bad taste, how the superintendent views those acts is certainly relevant to the Board in determining the proper penalty in this case. But the bigger issue is that the courts have said in that Fox case that we cited that when there was evidence raised about selective enforcement, which we absolutely raised, then those cases have to come in for the issue of mitigation on the penalty. Langis does not in any way overrule Fox. Langis does not in any way say that a court absolutely can't look at any cases unless they're exactly the same, which if you take it the way the city and the superintendent argue in their proof, there can never be a comparable case if you take it. Sure you could. What if Officer Finnegan was one of the people who was disciplined and he received a reprimand as Officer McDermott? Sure, you've got people who would be in exactly the same position and the same facts. That would be a case where you would have to consider the CR file. Do you agree? I would not agree that Officer Finnegan, if he were tried, would be in the same situation as Tim McDermott. I would not. They were involved in the same scene, but their roles in it are different. I think that is what Langis kept pointing to, do you have the same incident where certain officers, because of their rank or because of their political connections, whatever reason, received a reprimand, whereas McDermott, who had an exemplary police record, was terminated. I think that's the type of similarities that Langis is looking for. And that's what we have in this case. We have a situation in which this is not a civil rights case that we're bringing as a plaintiff. It's not a burden to prove that he was discriminated against because of his race or his gender. However, we are raising the issue of selective enforcement through those two similar incidents involving individuals in at least one of the cases with some of the highest ranking members of the police department who were treated differently for a photo that in many ways could be argued was a worse scenario and a worse black eye for the department than McDermott's case. So the selective enforcement, Langis in no way disallows comparison to other cases when it's for purposes of selective enforcement. And as a matter of fact, in Langis, they actually used cases as comparatives, but they indicated that the board doesn't have to. It's not binding. It's not precedential. They don't have to follow them. Okay. So in closing, again, this is an important case for a number of reasons. One, because it involves the due process rights of an individual that has a significant property interest and he deserves to have his due process rights exercised here. This is a man that has worked just under 20 years in the police department, has an amazing record, 73 awards. You saw some of the witness testimony that came in. The former superintendent referred him as an exemplary employee. He's been with his child in Sweden for almost 25 years. They have children. They have grandchildren. This individual has worked, has given his life and blood to the police department. So it's important in that respect. But it's also important in a couple other respects. This issue of photos and context in photos and disciplining individuals for photos, this is just beginning for us. If you look around this room, there's a lot of younger faces here. I have children, and their photos are all over the place. And I think that we certainly need to recognize the fact that there's going to be disciplinary hearings or criminal cases or allegations against individuals simply based upon a photo. And if we just look at this and say, well, that all speaks for itself. Without any context, it sends a horrible message to... Or a good message to all the young people to be careful. I agree. I agree. It's a very good message. But, you know, I think it's unfair because, let's face it, if there was cameras around when I was young and impressionable and dumb, I'd be upset about that right now. Justice Reyes and I do not relate to that, but thank you. I understand. I think it's unfair, and I think we can recognize that in this context with Mr. McDermott. Thank you. Thank you. All right. So selective enforcement counsel is affirming that it's just based on race. And if there's something in the photograph that depicts someone from a different ethnic group, then it's punishable per the police board. But if there is no race involved, you know, it's open season. Well, I would say, Your Honor, that race certainly does matter in this photograph. But I also, to be clear, the police should not be treating any person in this manner. It's not okay. It's not acceptable for police officers to be treating anyone as a hunted animal. Well, what if that person consents? Mr. Hurwitz seems to think that there was a complete lack of showing that this individual consented. Right. And as the board concluded, the superintendent did not have to show that there was consent or coercion to show that these police officers disrespected and maltreated this individual nonetheless. What if he was another officer and they thought this was, you know, just a hilarious prank? Well, I would submit that would still nevertheless be a Rule 2 violation. This is not an acceptable prank that should be occurring in what appears to be a police department. But would it result in termination? They were not on a hunting trip, as my opposing counsel suggests. Would it result in termination? Would it result in termination? Because there was just a prank between three police officers. I would leave that for the board to decide. It may well be that misconduct like that, where two officers are posing an African-American man as a hunted animal in a photograph, it may well be. I would leave that for the board to decide in the first instance. But I would also like to emphasize what else the record does show in this case about Mr. McDermott's conduct. He was walking by and he admits that he was in the photograph and he admits that he did so. But we're familiar with the facts. He took the long time. Counsel, we're familiar with the facts. There's just a couple that I would like to emphasize. Counsel, if you didn't hear me, we're familiar with the facts. He testified that he did not recognize the man in the photograph to be a police officer, that he had ever worked with. That's what I want to emphasize. He did not ask who this man was. How do you distinguish this photograph from the other photographs? I mean, you had an airplane crash where a young child is dead and police officers are taking a postcard photograph. I mean, that's pretty offensive. So how is that not offensive with regards to this scenario where you have a situation where someone may or may not be an arrestee? We have a situation where two officers are taking pictures in front of airplane wreckage. And the other photograph I issued was... So you don't think it was offensive to the family members that had people that perished in that crash? I do agree that those are offensive. But they cannot seriously be compared to an image of an African-American man being treated as a hunted animal. So that means it's only based on race? It is. It's only based on race. Is that what you're saying? Anything else goes. But if it's based on race, then it's deplorable. No, I would not say anything else goes. I would also like to point out that those two incidents were not matters that were brought before the police board. And that was one of the basis of the hearing officer's ruins. Those were cases that the superintendent did not bring before the police board. The police board is not bound to a former superintendent's decisions there and matters that were never brought before. And then that goes into Cox's argument that it's selective enforcement, right? You have high-ranking officials at the G2 taking pictures. And I don't know when the superintendent's decision... I don't know when those different instances that have not been before the police board have been. It's for the superintendent to recommend charges and it's for the board to decide what is an appropriate penalty when those charges are brought before it. Moreover, these are not the same circumstances. And, yes, race does matter. While anyone should not be treated in this manner, the fact of the matter remains that the man in the photograph was an African-American man. And the board does not have to turn a blind eye to the perception that that creates. I mean, fortunately, there is racism in this world and it's not surprising that many, if not everyone, viewing this photograph would see it in that light as a racially offensive image. And, of course, maintaining good relations with the public is crucial to the police department's mission, including race relations. It's extremely important to the mission of the Chicago Police Department. And the idea that this sort of conduct... So where's the prejudice to the superintendent allowing those photographs in? Because Koss is arguing that his client was prejudiced by the board not considering those photographs. So where's the prejudice to the superintendent's case, not allowing those photographs in? I'm sorry? In not allowing these other photographs to come into the evidence? Where's the prejudice to the superintendent's case? Well, they're simply irrelevant. I mean, perhaps it would be... Let me ask you a question. Where's the prejudice? In allowing those photographs? Yes. Well, in the long run, the superintendent may not have been prejudiced, but they're really utterly irrelevant. Because under Lanius, the Illinois Supreme Court's decision tells us when other incidents of comparable conduct would be relevant. And that comparison is only proper when you're dealing with a completely related case, the same incident, identical circumstances. That may be where you have two officers who are involved in the same fight. Two officers who are involved in, as you mentioned before, the same photograph. Those are the kind of situations where if the board treats one officer differently than the other one, you could infer that that's arbitrary or capricious. But you don't have this here, and what Lanius teaches is that there's just too many different things that are going to be different when you have two different circumstances, even when it's similar conduct, that are going to explain the difference in treatment. You can even take Lanius. That involved the same. There were two officers who weren't at their post during an emergency. One left work because of the emergency, and one didn't show up to work. And the court said, you know, those aren't comparable. They're not so highly related that they can be considered alongside each other. It's inappropriate. Plainly, the photo here is not the same incident as the 2005 airplane photos or the 2009 G20 photos that my opposing counsel wanted to put into evidence before the board. It's simply not useful to compare and contrast those cases. There's different circumstances. There's the passage of time. Sometimes a problem has gotten worse. My opposing counsel mentioned we better watch out. There's a lot of photographs on the Internet. Well, that might become a bigger problem. That requires, you know, a separate penalty down the line. We do need to be careful about these photographs and the images they portray to the public and how they affect the police department's ability to maintain the respect and cooperation of the public. And so I would submit that the hearing officer correctly excluded those. It was not an abuse of discretion. Under the Lanius standard, it is clear that these other incidents were not relevant and should not have been considered. And we do submit that each rule violation is supported by the photograph and McDermott's testimony. This picture speaks a thousand words. The picture is McDermott squatting next to a man with one hand on a long gun and the other on his throat with another officer placing antlers on the man's head. McDermott admits this was him in the photograph, that he willingly participated. We submit this is a violation of Rule 2, which prohibits conduct that impedes a department's efforts to achieve its policy and goals and brings discredit upon the department. Here the board considered the content of the photo alongside the nature of police work, which necessitates treating people with respect, like human beings and not like animals. The board also concluded this was a violation of Rule 8, that prohibits conduct that disrespects and maltreats a person. And with respect to this idea that it's a subjective opinion about this photograph, it's of course the board's opinion is what counts. Apparently what he means by this is different people can look at this photograph and reach different conclusions about whether it's offensive or how offensive it is. I have a question about the Rule 38. Rule 38 indicates the use of a weapon. Do we know if these were actually toy rifles or if they were actually real rifles? Do we know what type of weapons they really were, if they were weapons at all? We have Mr. McDermott's testimony only on that, and that is that it was a long gun. So it was a weapon. I couldn't tell you more details about exactly what this particular type of weapon is, but he confirmed that it was a weapon that he was holding in the photograph. He just referred to it as a long gun, though, right? Yes. Okay. Yes. And Rule 38 prohibits the unlawful and unnecessary display of a weapon. McDermott admits that there was no police purpose for displaying that weapon. Plainly, there is no law enforcement reason for displaying a gun just to make it look like you've hunted down an African-American man. And with respect to the other mitigating evidence that my counsel mentioned briefly here today, it's up to the Board to weigh the character evidence, and that includes his otherwise discipline-free tenure, his character evidence. It's up to the Board to weigh the seriousness of his offense against that mitigating evidence. The Board concluded this conduct was serious. And the Board's words, the photo is disgraceful and shocks the conscience and breeds public contempt for and resistance to the police. And that is why the Board concluded, even if McDermott had otherwise been well thought of as a police officer, he should not be allowed to remain on the job. There's no question that this photograph was deplorable. All right. But what about the mitigating evidence here, in terms of his years of service and letters of recommendation and commendation from former superintendents and other individuals that McDermott worked with? What about that factor? Well, those factors are all factors that the Board heard and weighed against the seriousness of the offense in this case. And it's up to the Board to make that judgment call, and this Court has held that it won't upset the Board's balance of those mitigating factors. It's up to the Board to decide whether the seriousness of the charge justifies termination, even in light of those mitigating factors. And it's also settled that even one incident of misconduct, when serious enough, can warrant discharge. And we submit that the Board's decision was not arbitrary or capricious. It's highly related to the needs of the Department. If there are no further questions, we do ask that the decision of the Board be affirmed. Counsel. Thank you. I'll be brief. With respect to the penalty, even assuming that every argument that the superintendent made is true, and even assuming that the Board's findings were proper, we have a five- to ten-second decision for my client. But sometimes, you know this, they make a bad decision and it impacts them the rest of their lives. I mean, he made a bad decision. Agreed. The question is, did the Board properly weigh the evidence and find that decision was so egregious he can't be a police officer anymore? They did not. They did not properly do it for several reasons. But one, because they didn't have comparative cases to instruct them on what a proper penalty was. And two, most significantly, again, this case comes down to assumptions that were made. And I just thought of a situation. I'm going to do a quick analogy. I had a friend in grammar school. He was an African-American. There was a play in which he played a dog and he had a red nose and he had a leash on him. The point of this is, what if there was a photo of my friend taken without any context and it was just that? It would be natural to assume that this was a horrible display of, or assume that I was it and say that there was a white individual in there, perhaps in a police uniform. It might be very reasonable to assume that this was mistreatment of somebody else. But doesn't that get to the issue of consent? I mean, your friend that you described, did he consent to be in the play? Absolutely, and that's my point. Do we know if this individual consented to be in the photograph? No, we don't, and that is not the problem of a respondent in a case. We don't have to put on any evidence. We could sit and rest at the conclusion of the city's case. The city bears the burden to prove the elements in this case. And what is clear here is that the board found this photo egregious because it assumed that there was maltreatment of an individual. And the only basis for that assumption, and this is clear, is because this individual is black. That's it. And I think it's unfair, and I think it speaks to society's prejudice in general. Thank you. Thank you. Okay, I want to thank Gossels for a well-argued matter. The court's going to take this under advisement, and we're going to take a short recess to re-complete the panel. Thank you.